**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**DELTA DIVISION**

**ROBERT BODNAR, on behalf of himself**                                              **PLAINTIFF**
**and all others similarly situated**

**VS.**                            **Case No. 2:22-cv-00013-BSM**

**CARVANA, LLC**                                                                            **DEFENDANT**


**MEMORANDUM OF LAW IN SUPPORT OF CARVANA, LLC's MOTION TO**
**COMPEL ARBITRATION AND TO DISMISS**

Eric Leon (New York Bar No. 2626562) (Admitted *Pro Hac Vice*)
eric.leon@lw.com
Marc S. Werner (New York Bar No. 5301221) (*Pro Hac Vice* application forthcoming)
marc.werner@lw.com
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200

Robert C. Collins III (Illinois Bar No. 6304674) (Admitted *Pro Hac Vice*)
robert.collins@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL  60611
Telephone:  (312) 876-7700

Grant E. Fortson (Ark. Bar No. 92148)
gfortson@laxvaughan.com
LAX, VAUGHAN, FORTSON, ROWE & THREET, P.A.
11300 Cantrell Road, Suite 201
Little Rock, AR 72212
Telephone:  (501) 376-6565

February 28, 2022                     *Attorneys for Defendant Carvana, LLC*

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND ................................................................................................3

    A.    The Fees At Issue Are Governed By Contracts That Contain An
        Arbitration Provision ............................................................................................3

    B.    Plaintiff Waived The Right To File Class Litigation Or To Proceed In A
        Representative Capacity........................................................................................5

    C.    Plaintiff Filed A Class Action Complaint In Court Despite His Express
        Agreement To Submit His Claims To Individual Arbitration ................................6

ARGUMENT ........................................................................................................................7

I.     THE COURT SHOULD ENFORCE PLAINTIFF'S AGREEMENT TO
      ARBITRATE HIS CLAIMS ON AN INDIVIDUAL BASIS .............................................7

    A.    Plaintiff And Carvana Entered Into A Valid, Written Agreement To
        Arbitrate ...............................................................................................................8

    B.    This Dispute Falls Within The Scope Of The Arbitration Agreement ...................9

    C.    Plaintiff Must Arbitrate His Dispute On A Non-Class Basis ...............................10

    D.    Nothing Asserted In Plaintiff's Complaint Prevents The Enforcement Of
        Plaintiff's Agreement To Arbitrate On A Non-Class Basis..................................11

        1.    The Arkansas Statute Cited By Plaintiff Does Not Preclude
            Individual Arbitration ..............................................................................11

        2.    Plaintiff's Allegation That The RISC Itself Does Not Contain An
            Arbitration Clause Is Incorrect And Irrelevant .........................................15

II.    IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED FOR
      FAILURE TO STATE A CLAIM ....................................................................................16

    A.    Plaintiff's Breach Of Contract Claim Should Be Dismissed For Failure To
        Allege A Breach Of Any Term Of The RISC.......................................................16

    B.    Plaintiff's DTPA Claim Should Be Dismissed Because Tennessee Law
        Applies, The DTPA Does Not Allow Class Claims, And Plaintiff Fails To
        Allege A Misrepresentation On Which He Relied ...............................................18

CONCLUSION....................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Affiliated Foods Midwest Coop., Inc. v. Integrated Distrib. Sols., LLC,*
460 F. Supp. 2d 1068 (D. Neb. 2006) ........................................................................14

*Allied-Bruce Terminix Cos., Inc. v. Dobson,*
513 U.S. 265 (1995) ..................................................................................................14

*Am. Ins. Co. v. Cazort,*
871 S.W.2d 575 (Ark. 1995) ......................................................................................16

*Arkansas Appliance Distrib. Co. v. Tandy Elecs., Inc.,*
292 Ark. 482 (1987) ..................................................................................................11

*Arkansas Research Med. Testing, LLC v. Osborne,*
2011 Ark. 158, 2011 WL 1423993 (April 14, 2011) ..................................................17

*AT&T v. Concepcion,*
563 U.S. 333 (2011) ..............................................................................................7, 13

*Bailey v. Abington,*
148 S.W.2d 176 (1941) ..............................................................................................12

*Ballard Grp., Inc. v. BP Lubricants USA, Inc.,*
436 S.W.3d 445 (Ark. 2014) .................................................................................16, 17

*Barker v. Golf U.S.A., Inc.,*
154 F.3d 788 (8th Cir. 1998) .....................................................................................14

*Bell Atl. v. Twombly,*
550 U.S. 544 (2007) ..................................................................................................16

*Benton v. Vanderbilt Univ.,*
137 S.W.3d 614 (Tenn. 2004) ....................................................................................15

*Berkley v. Dillard's Inc.,*
450 F.3d 775 (8th Cir. 2006) .......................................................................................7

*Berry v. Gordon,*
237 Ark. 547 (1964) ..................................................................................................12

*Berry v. Regions Fin. Corp.,*
507 F. Supp. 3d 972 (W.D. Tenn. 2020) ................................................................16, 17

*Brubaker v. Barrett*,
   801 F. Supp. 2d 743 (E.D. Tenn. 2011) ...................................................................8

*Brunson v. Santander Consumer USA, Inc.*,
   2018 WL 6252515 (E.D. Ark. Aug. 27, 2018) ...........................................8, 11, 18

*CD P'rs, LLC v. Grizzle*,
   424 F.3d 795 (8th Cir. 2005) ...................................................................................9

*Chapman v. Gen. Motors LLC*,
   531 F. Supp. 3d 1257 (E.D. Mich. 2021) ...............................................................19

*Cortina v. Wal-Mart, Inc.*,
   2014 WL 2860285 (S.D. Cal. June 23, 2014) ........................................................18

*Dean Witter v. Byrd*,
   470 U.S. 213 (1985) .................................................................................................7

*Doctor's Assocs., Inc. v. Casarotto*,
   517 U.S. 681 (1996) ..........................................................................................13, 14

*Duke v. Browning-Ferris Indus. of Tenn., Inc.*,
   2006 WL 1491547 (Tenn. Ct. App. May 31, 2006) ...............................................17

*Easter v. Compucredit Corp.*,
   2009 WL 499384 (W.D. Ark. Feb. 27, 2009) ........................................................14

*EEOC v. Woodmen of World Life Ins. Soc.*,
   479 F.3d 561 (8th Cir. 2007) ...................................................................................7

*Enderlin v. XM Satellite Radio Holdings, Inc.*,
   2008 WL 830262 (E.D. Ark. Mar. 25, 2008) .........................................................15

*Evans v. Harry Robinson Pontiac-Buick, Inc.*,
   983 S.W.2d 946 (Ark. 1999) ...................................................................................8

*Evans v. Nissan Extended Servs. N. Am., Inc.*,
   2016 WL 6826163 (E.D. Ark. Nov. 18, 2016) .......................................................9

*GGNSC Holdings, LLC v. Lamb By & Through Williams*,
   487 S.W.3d 348 (Ark. 2016) ...................................................................................8

*Goza v. Multi-Purpose Civic Ctr. Facilities Bd. of Pulaski Cty.*,
   2014 WL 3672128 (W.D. Ark. July 23, 2014) ......................................................13

*Holley v. Bitesquad.com LLC*,
   416 F. Supp. 3d 809 (E.D. Ark. 2019) ..................................................................13

*Holmes v. Henry Legal Grp., LLP*,
  2021 WL 2809111 (M.D. Tenn. July 6, 2021) ....................................................10

*J&B Tankers, Inc. v. Navistar Int'l Corp.*,
  539 F. Supp. 3d 955 (E.D. Ark. 2021) ..............................................................19

*Jarrett v. Panasonic Corp. of N. Am.*,
  8 F. Supp. 3d 1074 (E.D. Ark. 2013) ................................................................19

*Jones v. Santander Consumer USA Inc.*,
  2020 WL 4113045 (E.D. Ark. July 20, 2020) ..................................................13

*Jorja Trading, Inc. v. Willis*,
  598 S.W.3d 1 (Ark. 2020) ..................................................................................10

*Key v. Coryell*,
  86 Ark. App. 334 (2004) ....................................................................................14

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
  137 S.Ct. 1421 (2017) ........................................................................................13

*Land v. French Quarter P'rs LLC*,
  2020 WL 6047621 (E.D. Ark. Oct. 13, 2020) .....................................................8

*LeBlanc v. Bank of Am., N.A.*,
  2013 WL 3146829 (W.D. Tenn. June 18, 2013) ...............................................18

*Leonard v. Delaware N. Cos. Sport Serv., Inc.*,
  861 F.3d 727 (8th Cir. 2017) ...........................................................................7, 9

*Lyster v. Ryan's Family Steak Houses, Inc.*,
  239 F.3d 943 (8th Cir. 2001) ..............................................................................7

*Matanky v. Gen. Motors LLC*,
  370 F. Supp. 3d 772 (E.D. Mich. 2019) ............................................................19

*Mitsubishi v. Soler*,
  473 U.S. 614 (1985) .............................................................................................7

*Mounce v. CHSPC, LLC*,
  2017 WL 4392048 (W.D. Ark. Sept. 29, 2017) ................................................19

*Mountain Home Flight Serv., Inc. v. Baxter Cty., Ark.*,
  758 F.3d 1038 (8th Cir. 2014) ....................................................................16, 17

*Murphy v. Gospel for Asia, Inc.*,
  327 F.R.D. 227 (W.D. Ark. 2018) .....................................................................19

*Neubaeur v. FedEx Corp.*,
  849 F.3d 400 (8th Cir. 2017) .................................................................3

*Nursing Home Consultants, Inc. v. Quantum Health Servs., Inc.*,
  926 F. Supp. 835 (E.D. Ark. 1996) ....................................................8, 11

*P.S. Prods., Inc. v. Activision Blizzard, Inc.*,
  140 F. Supp. 3d 795 (E.D. Ark. 2014) ...................................................1

*Parm v. Bluestem Brands, Inc.*,
  898 F.3d 869 (8th Cir. 2018) ...........................................................7, 10

*Se. Stud & Components v. Am. Eagle Design Build Studios*,
  588 F.3d 963 (8th Cir. 2010) ...............................................................13

*Seawright v. Am. Gen. Fin. Servs., Inc.*,
  507 F.3d 967 (6th Cir. 2007) .............................................................8, 9

*Southland Corp. v. Keating*,
  465 U.S. 1 (1984) ...............................................................................13

*In re Target Corp. Data Sec. Breach Litig.*,
  66 F. Supp. 3d 1154 (D. Minn. 2014) ..................................................19

*Unison Co., Ltd. v. Juhl Energy Dev., Inc.*,
  789 F.3d 816 (8th Cir. 2015) ................................................................7

*Wahrmund v. Buschman*,
  2018 WL 1277726 (E.D. Ark. Mar. 12, 2018) .....................................11

*Weaver v. Edward D. Jones & Co. L.P.*,
  2010 WL 2366027 (E.D. Ark. June 10, 2010) ......................................15

*White v. Volkswagen Grp. of Am., Inc.*,
  2013 WL 685298 (W.D. Ark. Feb. 25, 2013) .......................................19

*Whitley v. Baptist Health*,
  2020 WL 4575991 (E.D. Ark. Aug. 7, 2020) .......................................19

*Williams v. City of Pine Bluff*,
  284 Ark. 551 (1985) ............................................................................12

*Williams v. State Farm Mut. Auto. Ins. Co.*,
  2010 WL 2573196 (E.D. Ark. June 22, 2010) .................................17, 18

## STATUTES

9 U.S.C. § 2 ...........................................................................................7

Ark. Code Ann.
   § 4-75-408 ................................................................................................................13
   § 4-75-413 ...................................................................................... *passim*
   § 4-88-113 ................................................................................................................18

## RULES

Fed. R. Civ. P. 9 ..................................................................................................................19

Fed. R. Civ. P. 12 .........................................................................................................1, 16

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Carvana, LLC ("Carvana") respectfully submits this memorandum of law in support of its Motion to Compel Arbitration and to Dismiss the claims Plaintiff Robert Bodnar[1] ("Plaintiff") asserts in his Complaint (Dkt. 2) (the "Complaint").

## INTRODUCTION

Plaintiff alleges that, upon purchasing a vehicle from Carvana, he entered into a contract with Carvana that called for the payment of state-specific, line-item fees in exchange for registration and transfer of title services.  Plaintiff alleges that Carvana failed to properly register, license, and transfer title to his vehicle in exchange for these fees in breach of contract and in violation of Arkansas' Deceptive Trade Practices Act ("DTPA").  In other words, Plaintiff alleges that he was harmed by paying fees for services he did not properly receive.  His claims are *not* predicated on exactly how the payment of those fees was financed or otherwise structured.  Thus, while Plaintiff references a retail installment contract ("RISC") in his Complaint, the contract that addresses the bargain of fees-for-services placed at issue is the Retail Purchase Agreement ("RPA") that Plaintiff entered into with Carvana at the time of his purchase.  The RPA includes an arbitration provision that, in turn, incorporates a separate Arbitration Agreement that plainly encompasses the claims asserted in the Complaint and requires binding arbitration on a non-class basis.  Carvana, therefore, respectfully requests that the Court compel arbitration on an individual

---

[1] The Complaint refers to Plaintiff as Robert Bodnar.  *See* Compl. ¶ 1.  Plaintiff's contracts, however, refer to him as Richard Bodnar.  *See* Exs A-C.  Citations to "Ex. _" refer to exhibits attached to the Declaration of Robert C. Collins III submitted herewith.  The Court may consider "documents necessarily embraced by the complaint," including "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting a motion to dismiss into a motion for summary judgment.  *See, e.g.*, *P.S. Prods., Inc. v. Activision Blizzard, Inc.*, 140 F. Supp. 3d 795, 800 (E.D. Ark. 2014).

basis and dismiss or stay Plaintiff's claims.

Plaintiff acknowledges the existence of the Arbitration Agreement, but he asserts that it is unenforceable under an Arkansas statute that allegedly requires an arbitration provision to be in a separate document and to state that the purchaser is waiving the right to sue in court. As an initial matter, Plaintiff agreed that Tennessee law—not Arkansas law—governs this dispute, and regardless, the Arbitration Agreement is a separate document that makes clear that the parties "are both giving up our right to go to court (except small claims court) to resolve our dispute." Moreover, to the extent the Arkansas statute imposes an additional precondition to the enforceability of the Arbitration Agreement, the Arkansas statute is preempted by the Federal Arbitration Act ("FAA"). The U.S. Supreme Court has made clear, time and again, that a state law that places arbitration agreements on unequal footing with other contracts is preempted under the FAA and of no force or effect.

Alternatively, and in addition to being subject to individual arbitration, Plaintiff's claims fail as a matter of law. Plaintiff cannot sustain his breach-of-contract claim because he pleads that Carvana breached the RISC but he fails to identify any term of the RISC that Carvana allegedly breached. Likewise, his Arkansas DTPA claim must be dismissed, both because Tennessee (not Arkansas) law governs this dispute and because, even if Arkansas law applied, the DTPA does not permit private class action claims. Moreover, Plaintiff bases his claim on a purported misrepresentation in the RISC that simply does not exist. Thus, even if the Court declines to compel arbitration, it should dismiss the Complaint for failure to state a claim.

## FACTUAL BACKGROUND

A.     **The Fees At Issue Are Governed By Contracts That Contain An Arbitration Provision**

Plaintiff alleges that he bought a vehicle from Carvana's dealer location in Memphis, Tennessee.  Compl. ¶¶ 6, 7.  Plaintiff alleges that he agreed to pay a state license registration fee of $25.39, a state title fee of $10.00, a temporary permit fee of $1.00, and a vehicle protection fee[2] of $1,175.00 but that Carvana "failed to provide" Plaintiff with the permanent registration for the vehicle or to transfer title in exchange for these fees.  *Id.* ¶¶ 6, 11, 15.  The document that identifies the individual fees that Plaintiff puts at issue is the RPA, which specifically references a "Registration Fee" of $25.39, a "Temporary Permit Fee" of $1.00, a "Title Fee" of $10.00, and a "Vehicle Protection" charge of $1,175.00.[3]  *See* RPA (Ex. A) at 1.  The RPA provides that it is "governed by federal law and the law of the state of the [listed] Dealership Address" and that Plaintiff "agreed to accept title and ownership of the Vehicle in the state of" that same dealership. *See id.* at 1.  Plaintiff's RPA states that he purchased a vehicle from a Carvana dealership in Tennessee, and Plaintiff thus agreed that the RPA is governed by Tennessee law.  *See id.*; *see also* Compl. ¶ 7.

The RPA contains a provision titled (in bold) "**Arbitration Agreement**" that expressly incorporates the Arbitration Agreement that Plaintiff executed with Carvana at the time of his purchase.  *See* RPA (Ex. A) at 3 ("The arbitration agreement entered into between you and Dealer is incorporated by reference into and is part of this Agreement"); *see also* Compl. ¶ 21.  The

---

[2] While Plaintiff alleges he paid a Vehicle Protection fee, he does not appear to put this fee at issue in his Complaint.

[3] Plaintiff alleges that these fees are set forth in the RISC.  Compl. ¶ 6.  The plain language of the RPA and the RISC, however, make clear that these fees are outlined in the RPA, *not* the RISC, and the plain language of the contracts placed at issue controls.  *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 405 (8th Cir. 2017).

Arbitration Agreement likewise confirms that it is "part of, and . . . hereby incorporated into," the RPA (as well as the RISC).  *See* Arb. Agmt.  (Ex. B) at 1.

In the Arbitration Agreement, Plaintiff broadly agreed to "final and binding" arbitration of "any claim, dispute [or] controversy between" himself and Carvana "arising from or related to" the RPA (as well as the RISC), the "vehicle" Plaintiff bought, the "sale of the vehicle," the "provision or sale of any goods and services . . . covered by" the RPA (or the RISC) "or related to the vehicle," "[a]dvertisements, promotions or oral or written statements related to" the RPA (or the RISC), and the "collection of amounts" owed by Plaintiff.  *See id.* at 2.  Plaintiff agreed that the definition of a "claim" subject to arbitration should be construed to have "the broadest reasonable meaning," encompassing "claims of every kind of nature," and including "statutory claims" and "contract claims."  *See id.*  Plaintiff's Arbitration Agreement is governed by the FAA. *See id.* at 4.

Plaintiff's Arbitration Agreement contains several bolded warnings advising him that he was agreeing to waive certain of his rights in the event of a dispute, including the right to sue in court.  *See id.* at 1, 5.  Specifically, the Arbitration Agreement is titled "**ARBITRATION AGREEMENT**" in bolded, all-caps font and contains a section on the first page titled "**NOTICE OF ARBITRATION AGREEMENT**," also in bolded, all-caps font.  *See id.* at 1.  Within that "**NOTICE**" section, the Arbitration Agreement specifically explains that, in the event of a dispute, "either of [the parties] can decide to resolve it by using arbitration," a "process for resolving disputes without going to court."  *Id.*  It explicitly notes that "[b]y choosing arbitration, we are both giving up our right to go to court (except small claims court) to resolve our dispute," and it provides further explanation about the arbitration process and how it differs from a court proceeding.  *Id.*  The Notice section concludes by cautioning, in bold, that "**[u]nless you opt out**

of the Arbitration Agreement, it will substantially affect your rights in the event of a dispute between you and us." *Id.*

The remainder of the Arbitration Agreement then provides a more fulsome explanation of the arbitration process, including the process by which an individual can reject the Arbitration Agreement. *Id.* at 2-4. It states that the Arbitration Agreement "describes how a Claim may be arbitrated instead of litigated in court." *Id.* at 2. Finally, the top of the signature page of the Arbitration Agreement contains the following phrase in bold, all-caps font: "**BY SIGNING BELOW, YOU EXPRESSLY AGREE TO THE ABOVE AGREEMENT. THE AGREEMENT MAY SUBSTANTIALLY LIMIT YOUR RIGHTS IN THE EVENT OF A DISPUTE. YOU ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT**." *Id.* at 5. Plaintiff's signature is on the line directly beneath this acknowledgement. *Id.*

**B.    Plaintiff Waived The Right To File Class Litigation Or To Proceed In A Representative Capacity**

In addition to agreeing to submit his dispute to arbitration, Plaintiff also agreed to a class waiver. *See id.* at 3. The Arbitration Agreement that Plaintiff executed and that is incorporated into the RPA provides:

> <u>No Class Action or Private Attorney General Action</u>
> Notwithstanding any language herein to the contrary, if you or we elect to arbitrate a Claim, *neither you nor we will have the right to*: (1) *participate in a class action in court or in arbitration, either as a class representative, class member or class opponent*; (2) act as a private attorney general in court or in arbitration, or (3) *join or consolidate your Claim(s) with claims of any other person*, and the arbitrator shall have no authority to conduct any such class, private attorney general or multiple-party proceeding.

*Id.*[4]  The first page of the Arbitration Agreement, in a section titled "*NOTICE OF ARBITRATION*

*AGREEMENT*," further notified Plaintiff as follows:

> If you or we choose arbitration, only our individual claims will be
> arbitrated.  Claims by groups of individuals or "Class" arbitrations,
> are not allowed.  By choosing to arbitrate, you will be giving up your
> right to participate in a class action or a private attorney general
> action in court or in arbitration with respect to the dispute.

*Id.* at 1.

### C.      Plaintiff Filed A Class Action Complaint In Court Despite His Express Agreement To Submit His Claims To Individual Arbitration

Notwithstanding his agreement to arbitrate on a non-class basis, Plaintiff filed a putative

class action complaint in the Circuit Court of Crittenden County, Arkansas, on October 27, 2021,

which Carvana timely removed.  *See* Dkt. 1.  Plaintiff asserts claims for breach of contract and

violation of the DTPA.  *See* Compl. ¶¶ 40-58.  While Plaintiff points the Court to the RISC, both

of Plaintiff's claims actually arise out of his RPA with Carvana and the specific fees set forth

therein.  *See id.* ¶¶ 6-11, 14, 16, 19.  Plaintiff seeks to represent a class of individuals (the

"Nationwide Class") defined as:

> All persons in the United States west of the Mississippi River who
> entered into contracts with CARVANA to purchase vehicles in the
> two years before the commencement of this action and CARVANA
> agreed to provide car registration services with non-temporary
> vehicle registrations in the state of their residence.

*See id.* ¶ 24(a).

Plaintiff also seeks to represent a subclass of "[a]ll persons from the State of Arkansas who

are members of the Nationwide Class."  *See id.* ¶ 24(b).  Plaintiff seeks to proceed in a

representative capacity even though he specifically waived the right to act as a class representative.

---

[4] Unless otherwise indicated herein, all internal citations and quotations are omitted, and emphasis
is added.

*See* Arb. Agmt. (Ex. B) at 1, 3.

## ARGUMENT

## I.     THE COURT SHOULD ENFORCE PLAINTIFF'S AGREEMENT TO ARBITRATE HIS CLAIMS ON AN INDIVIDUAL BASIS

There is a strong federal policy in favor of arbitration. *See, e.g.*, *AT&T v. Concepcion*, 563 U.S. 333, 339 (2011); *Unison Co., Ltd. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 818 (8th Cir. 2015). That policy is embodied in the FAA, which provides that an agreement to arbitrate "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2; s*ee also Leonard v. Delaware N. Cos. Sport Serv., Inc.*, 861 F.3d 727, 729 (8th Cir. 2017). Indeed, the FAA was enacted to "reverse the longstanding judicial hostility to arbitration agreements." *EEOC v. Woodmen of World Life Ins. Soc.*, 479 F.3d 561, 565 (8th Cir. 2007); *see also Concepcion*, 563 U.S. at 339. The FAA "leaves no place for the exercise of discretion by a district court" and mandates instead that "district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration provision has been signed." *Dean Witter v. Byrd*, 470 U.S. 213, 218 (1985).

Federal courts follow a two-step analysis to determine whether to enforce an arbitration clause, asking (i) whether there is a valid agreement to arbitrate, and if so, (ii) whether that agreement encompasses the dispute at issue. *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 873 (8th Cir. 2018). "[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Berkley v. Dillard's Inc.*, 450 F.3d 775, 777 (8th Cir. 2006); *see also Mitsubishi v. Soler*, 473 U.S. 614, 626 (1985). Dismissal based on an arbitration provision is

proper pursuant to Rule 12(b)(6). *See, e.g., Land v. French Quarter P'rs LLC*, 2020 WL 6047621, at *1 (E.D. Ark. Oct. 13, 2020).

### A.      Plaintiff And Carvana Entered Into A Valid, Written Agreement To Arbitrate

Plaintiff entered into a valid and enforceable agreement to arbitrate with Carvana. *See* Arb. Agmt. (Ex. B); RPA (Ex. A) at 3. The essential elements for an enforceable arbitration agreement under Tennessee law are legal consideration and mutual assent.[5] *See Brubaker v. Barrett*, 801 F. Supp. 2d 743, 751 (E.D. Tenn. 2011). Arkansas law similarly requires consideration and mutuality as well as competent parties and subject matter. *See, e.g.*, *GGNSC Holdings, LLC v. Lamb By & Through Williams*, 487 S.W.3d 348, 353 (Ark. 2016).

Plaintiff signed the Arbitration Agreement as part of the purchase of his vehicle.[6] *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007); *GGNSC Holdings*, 487 S.W.3d at 353; *see also* Compl. ¶ 21. It was undisputedly executed by competent parties (Carvana and Plaintiff), identifies the subject matter (arbitration in the event of a dispute regarding various types of claims, including those arising out of Plaintiff's vehicle purchase), is supported by consideration (including in the form of the parties' mutual promises to subject future disputes to arbitration), reflects mutual agreement (between Carvana and Plaintiff), and imposes mutual obligations

---

[5] The parties' agreement in the RPA that this dispute is governed by Tennessee law is fully enforceable. *See* disc. *supra* at 2-3; *Nursing Home Consultants, Inc. v. Quantum Health Servs., Inc.*, 926 F. Supp. 835, 841 (E.D. Ark. 1996) (enforcing contractual choice-of-law provision stating that Pennsylvania law applies in part because Pennsylvania was "the agreed upon point of sale for all goods solicited" under the contract); *Brunson v. Santander Consumer USA, Inc.*, 2018 WL 6252515, at *3 (E.D. Ark. Aug. 27, 2018) (choice-of-law provision specifying Texas law reasonably related to contract where contract listed defendant's Texas address) (citing *Evans v. Harry Robinson Pontiac-Buick, Inc.*, 983 S.W.2d 946, 947 (Ark. 1999)). The Court, however, can and should compel arbitration on an individual basis under the laws of either Tennessee or Arkansas, and Carvana thus cites both in the relevant places in this memorandum.

[6] Indeed, the Arbitration Agreement confirms that it is "part of, and . . . hereby incorporated into," the RPA (as well as the RISC). *See* Arb. Agmt. (Ex. B) at 1.

(including because either party can decide to resolve a future dispute by arbitration).  *See* Arb. Agmt. (Ex. B).  The Arbitration Agreement is also incorporated into the RPA (and the RISC), which are themselves valid contracts.  *See id.* at 1 ("This Agreement is part of, and is hereby incorporated into, the Contract," with the Contract defined as the "Retail Purchase Agreement . . . and/or the related Retail Installment Contract"); RPA (Ex. A) at 3 ("The arbitration agreement entered into between you and Dealer is incorporated by reference into and is part of this Agreement").  Plaintiff thus clearly entered into a valid agreement to arbitrate his dispute with Carvana.  *See*, *e.g.*, *Seawright*, 507 F.3d at 977 (holding that plaintiff entered into valid arbitration agreement under Tennessee law); *Evans v. Nissan Extended Servs. N. Am., Inc.*, 2016 WL 6826163, at *2 (E.D. Ark. Nov. 18, 2016) (holding that plaintiff entered into valid arbitration agreement under Arkansas law).

**B.  This Dispute Falls Within The Scope Of The Arbitration Agreement**

The claims asserted in the Complaint fall squarely within the scope of the Arbitration Agreement.  *See* Arb. Agmt. (Ex. B) at 2; RPA (Ex. A) at 3.  The arbitration clause is unquestionably broad:  it is to be given "the broadest reasonable meaning" and to include, without limitation, "any claim, dispute [or] controversy . . . arising out of or related to" the "Contract" (including the RPA as well as the RISC), the "vehicle" and "sale of the vehicle," the "provision or sale of any goods and services . . . covered by" the RPA (as well as the RISC) or "related to the vehicle," and the "collection of amounts" owed by Plaintiff.  Arb. Agmt. (Ex. B) at 2; *see, e.g.*, *Leonard v. Delaware N. Cos. Sport. Serv., Inc.*, 861 F.3d 727, 730 (8th Cir. 2017) ("The language 'any dispute arising from the Activity' is broad."); *CD P'rs, LLC v. Grizzle*, 424 F.3d 795, 800 (8th Cir. 2005) (agreements that cover "any claim, controversy, or dispute" are broad).

Where, as here, the arbitration clause is broad, "the liberal federal policy favoring arbitration agreements requires that a district court send a claim to arbitration as long as the underlying factual

allegations simply touch matters covered by the arbitration provision." *Parm*, 898 F.3d at 874. Plaintiff's claims here plainly arise out of or relate to his "Contract." Plaintiff's claims hinge on the allegations that he paid state license, title, and registration fees in connection with the purchase of his vehicle, but that Carvana failed to properly provide state license, title, and registration. *See* Compl. ¶¶ 6-11, 14, 16, 19. These matters are expressly covered by the Arbitration Agreement. *See* Arb. Agmt. (Ex. B) at 2 (arbitration clause covers, *inter alia*, claims or disputes relating to the "vehicle" and the "sale of the vehicle," "goods and services" allegedly related to the sale and the vehicle, and the "collection of amounts" owed by Plaintiff). Because Plaintiff's claims touch matters covered by the broad arbitration provision to which he agreed, they belong in binding arbitration. *Parm*, 898 F.3d at 877-78.

### C.     Plaintiff Must Arbitrate His Dispute On A Non-Class Basis

Once in arbitration, Plaintiff must arbitrate his dispute on an individual basis. Plaintiff agreed that he does not have the right to "participate in a class action in court or in arbitration" as a class representative. *See* Arb. Agmt. (Ex. B) at 3. This class waiver is valid and fully enforceable under Tennessee and Arkansas law. *See, e.g.*, *Holmes v. Henry Legal Grp., LLP*, 2021 WL 2809111, at *6 (M.D. Tenn. July 6, 2021) (observing "courts have upheld class action waivers for many years" and enforcing waiver under Tennessee law); *Jorja Trading, Inc. v. Willis*, 598 S.W.3d 1, 8 (Ark. 2020) (stating that class waiver did not violate Arkansas law and enforcing waiver). Plaintiff was provided with the opportunity to opt out of the Arbitration Agreement, including the class waiver, and elected not to do so. *See* Arb. Agmt. (Ex. B) at 2. The Court should thus enforce the parties' Arbitration Agreement as written and compel Plaintiff to arbitration on a non-class basis only.

**D.      Nothing Asserted In Plaintiff's Complaint Prevents The Enforcement Of Plaintiff's Agreement To Arbitrate On A Non-Class Basis**

Plaintiff appears to take the position in his Complaint that the arbitration agreement is unenforceable under Section 4-75-413 of the Arkansas Automobile Dealer's Anti-Coercion Act (the "ADACA") and/or because the RISC he executed does not *itself* contain an arbitration provision.  *See* Compl. ¶¶ 20-22.  Each of those arguments fails.

**1.      The Arkansas Statute Cited By Plaintiff Does Not Preclude Individual Arbitration**

Plaintiff alleges that Section 4-75-413 of the ADACA renders the Arbitration Agreement "void."  *See* Compl. ¶¶ 21-22.  In doing so, Plaintiff misreads and misapplies both the contract and the state and federal law at issue, for at least three reasons.

*First*, Section 4-75-413 of the ADACA does not apply here.   Plaintiff agreed that Tennessee law, not Arkansas law, applies to this dispute about specific fees set forth in the RPA.  *See* RPA (Ex. A) at 1; disc. *supra* at 2-3; *see also Nursing Home Consultants*, 926 F. Supp. at 841.  "Arkansas courts recognize and enforce valid express choice of law provisions contained in contracts."  *Wahrmund v. Buschman*, 2018 WL 1277726, at *4 (E.D. Ark. Mar. 12, 2018); *see also Arkansas Appliance Distrib. Co. v. Tandy Elecs., Inc.*, 292 Ark. 482, 485 (1987).  This is especially so where, as here, Plaintiff purchased his vehicle from a dealership in Tennessee and agreed to accept title to and ownership of the vehicle in Tennessee.  *See* RPA (Ex. A) at 1; Compl. ¶ 7; *Brunson v. Santander Consumer USA, Inc.*, 2018 WL 6252515, at *3 (E.D. Ark. Aug. 27, 2018).

*Second*, even if Section 4-75-413 were considered, it does not "void" the Arbitration Agreement that Plaintiff signed.  *See* Compl. ¶ 21.  Section 4-75-413 provides that the "purchaser of a motor vehicle may knowingly and voluntarily agree to submit to binding arbitration" if he or she signs a "separate document" that contains a written waiver "specifically acknowledging the purchaser's relinquishment of the right to have any dispute over the sale or operation of the motor

vehicle decided by a court of law."  Ark. Code Ann. § 4-75-413(b)(1)(A); *see* Compl. ¶ 21.  That is exactly what occurred here.  The Arbitration Agreement Plaintiff signed is a separate document that includes an express acknowledgement that "**it will substantially affect your rights in the event of a dispute between you and us**," and that "[b]y choosing arbitration, we are both giving up our right to go to court . . . to resolve our dispute."  Arb. Agmt. (Ex. B) at 1 (bold in original); *see also* Arb. Agmt. (Ex. B) at 5 (noting, in bold, "**THE AGREEMENT MAY SUBSTANTIALLY LIMIT YOUR RIGHTS IN THE EVENT OF A DISPUTE**."); disc. *supra* at 3-6.  Plaintiff was thus clearly on notice that he was knowingly and voluntarily agreeing to submit to binding arbitration.

Plaintiff's allegation that the Arbitration Agreement lacks the exact "bold print" he (incorrectly) claims is required is irrelevant.  *See* Compl. ¶ 22.  As the Arkansas Supreme Court has repeatedly held, "[i]n determining the intent of the legislature the reason and spirit take precedence over the letter of the law, especially in cases where strict adherence to the letter would result in absurdity or injustice or would defeat the plain purpose of the law."  *Williams v. City of Pine Bluff*, 284 Ark. 551, 555 (1985); *see also Berry v. Gordon*, 237 Ark. 547, 558 (1964) ("[T]he courts are confined to the real purpose and intention of the language rather than to the literal verbiage employed," and "the reason, spirit, and intention of the legislation or Constitutional provision shall prevail over its letter."); *Bailey v. Abington*, 148 S.W.2d 176, 180 (1941) ("[W]ords may be modified or rejected and others substituted, or words and phrases may be transposed.  So the meaning of general language may be restrained by the spirit or reason of the statute, and may be construed to admit implied exceptions.").

The plain purpose of the ADACA is to prevent automobile dealers from engaging in certain types of coercion, and the statute is focused on preventing a reduction in competition in the market

for financing the sale of motor vehicles. *See* Ark. Code Ann. § 4-75-408. These purposes are plainly met here. Carvana provides motor vehicle customers an additional option in the motor vehicle marketplace and thus provides customers *greater* choice. The Arbitration Agreement gave Plaintiff the opportunity to opt out of the arbitration process and is replete with notice explaining that Plaintiff was otherwise waiving the right to raise this dispute in court, thus meeting the "reason, spirit, and intention" of Section 4-75-413. *See* Arb. Agmt. (Ex. B) at 1-2, 5. Indeed, Arkansas courts consistently enforce arbitration agreements when significantly less notice is provided. *See Jones v. Santander Consumer USA Inc.*, 2020 WL 4113045, at *3 (E.D. Ark. July 20, 2020) (enforcing arbitration clause even where court found contract to be one of adhesion); *Goza v. Multi-Purpose Civic Ctr. Facilities Bd. of Pulaski Cty.*, 2014 WL 3672128, at *3 (W.D. Ark. July 23, 2014) (enforcing arbitration provision in terms of use on website); *see also Holley v. Bitesquad.com LLC*, 416 F. Supp. 3d 809, 819 (E.D. Ark. 2019).

*Third*, even if the Arbitration Agreement were found not to comply with Section 4-75-413, the Arbitration Agreement would still be fully enforceable, because, as applied by Plaintiff, Section 4-75-413 is preempted by the FAA. The FAA preempts state laws that "withdraw[] the power to enforce arbitration agreements." *Se. Stud & Components v. Am. Eagle Design Build Studios*, 588 F.3d 963, 967 (8th Cir. 2010) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 16 n.10 (1984)). In enacting the FAA, "Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed ***upon the same footing as other contracts***." *Id.* (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)); *see also Concepcion*, 563 U.S. at 344 (holding the FAA preempts California's *Discover Bank* rule); *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S.Ct. 1421, 1427 (2017) (holding the FAA preempts Kentucky's clear-statement rule). As a result, "pursuant to Supreme Court precedent,"

"Arkansas [can]not . . . impose[] additional requirements that appl[y] only to arbitration agreements," and not to contracts generally.  *Am. Eagle Design Build Studios*, 588 F.3d at 967.

Section 4-75-413 of the ADACA runs afoul of this clear U.S. Supreme Court and Eighth Circuit precedent because it applies *only* to arbitration and forum selection clauses.  *See* Ark. Code Ann. § 4-75-413 ("Arbitration and forum selection clauses in the sale of motor vehicles").  Section 4-75-413 prohibits agreements to arbitrate unless they comply with additional notice and waiver requirements, but it does not impose these requirements as preconditions to the formation of contracts generally under Arkansas law.  *See* Ark. Code Ann. § 4-75-413;  *Key v. Coryell*, 86 Ark. App. 334, 341 (2004) (elements of contract formation are: (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation).  The U.S. Supreme Court as well as lower federal courts have routinely found that state laws that seek to impose similar notice requirements as preconditions to the enforcement of arbitration agreements are preempted by the FAA.  *See*, *e.g.*, *Casarotto*, 517 U.S. at 683 (FAA preempts state law requiring notice of arbitration to be "typed in underlined capital letters on the first page of the contract"); *Affiliated Foods Midwest Coop., Inc. v. Integrated Distrib. Sols., LLC*, 460 F. Supp. 2d 1068, 1073 (D. Neb. 2006) (FAA preempts state law requiring notice of arbitration to be in capitalized, underlined type adjoining the signature block).

Because Section 4-75-413 places arbitration agreements on "unequal footing" with other contracts, it is "unlawful" under the FAA, and is preempted.  *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 281 (1995); *see also Easter v. Compucredit Corp.*, 2009 WL 499384, at *3 (W.D. Ark. Feb. 27, 2009); *Barker v. Golf U.S.A., Inc.*, 154 F.3d 788, 792 (8th Cir. 1998) (finding that a doctrine under Oklahoma law requiring separate consideration for arbitration clauses "might risk running afoul of the strong federal policy favoring arbitration" and declining

to apply the doctrine to invalidate arbitration agreement); *Enderlin v. XM Satellite Radio Holdings, Inc.*, 2008 WL 830262, at *9-10 (E.D. Ark. Mar. 25, 2008) (holding Arkansas rule requiring mutuality within arbitration provision itself preempted by the FAA); *Weaver v. Edward D. Jones & Co. L.P.*, 2010 WL 2366027, at *2-3 (E.D. Ark. June 10, 2010) (same). For the foregoing reasons, Section 4-75-413 of the ADACA does not "void" the Arbitration Agreement, and the Court should compel arbitration on a non-class basis.

## 2. Plaintiff's Allegation That The RISC Itself Does Not Contain An Arbitration Clause Is Incorrect And Irrelevant

Plaintiff incorrectly alleges that the "RISC contains *no* forced arbitration clause." Compl. ¶ 20. The Arbitration Agreement makes clear that it "is part of, and is hereby incorporated into, the Contract," which includes the RISC. Arb. Agmt. (Ex. B) at 1. Regardless, the absence or presence of an arbitration clause in the RISC itself is irrelevant to the Court's determination of this Motion. *See* Compl. ¶ 20. The dispute that Plaintiff raises is about the *charging of* separate state license, title, and registration fees in exchange for the *provision of* specified services. *Id.* ¶¶ 6, 11, 15. The contract that outlines those specific, alleged fees is the RPA, *not* the RISC. *See* RPA (Ex. A) at 1. Indeed, the RISC not only fails to outline the specific fees and services at issue, but it also is about the *financing* of Plaintiff's vehicle purchase, *not* the charging of specific fees in exchange for the specific, alleged services at issue in this case. *See* RISC (Ex. C) at 1-3; *id.* at 1; *see also* Compl. ¶ 24(a) (defining proposed class as persons for whom "Carvana agreed to provide car registration services with non-temporary vehicle registrations in the state of their residence.").

Having brought claims that, in substance, seek to enforce the terms of the RPA, Plaintiff is bound by the RPA's arbitration provision. *See, e.g., Benton v. Vanderbilt Univ.*, 137 S.W.3d 614, 620 (Tenn. 2004) (parties cannot "enforce favorable terms of a contract while avoiding

unfavorable terms"); *Am. Ins. Co. v. Cazort*, 871 S.W.2d 575, 579-580 (Ark. 1995) ("[Plaintiff] cannot rely on the contract when it works to its advantage and ignore it when it works to its disadvantage.").  Moreover, the separate Arbitration Agreement that Plaintiff signed requires arbitration of claims whether they are based in the RPA or the RISC, and Plaintiff's claims are thus clearly subject to individual arbitration under any circumstance.  *See* Arb. Agmt. (Ex. B) at 1-2 (all claims related to the "Contract" are subject to arbitration, with "Contract" defined to include the RISC and the RPA).

## II.  IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Should the Court decline to compel arbitration of Plaintiff's claims, Carvana respectfully submits that the Court should dismiss both of Plaintiff's claims for failing to "state a claim upon which relief can be granted."  Fed. R. Civ. P 12(b)(6).  A complaint fails to state a claim either when it lacks a cognizable legal theory or when it fails to allege sufficient facts to support such a theory.  *See Bell Atl. v. Twombly*, 550 U.S. 544, 555-56 (2007).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Mountain Home Flight Serv., Inc. v. Baxter Cty., Ark.*, 758 F.3d 1038, 1042 (8th Cir. 2014) (quoting *Twombly*, 550 U.S. at 570).  Plaintiff's Complaint fails to meet this standard.

### A.  Plaintiff's Breach Of Contract Claim Should Be Dismissed For Failure To Allege A Breach Of Any Term Of The RISC

Under both Arkansas and Tennessee law, to state a claim for breach of contract, a plaintiff must plead (i) the existence of an enforceable contract, (ii) the obligation of the defendant thereunder, (iii) a violation by the defendant, and (iv) damages resulting to the plaintiff from the breach.  *See, e.g.*, *Ballard Grp., Inc. v. BP Lubricants USA, Inc.*, 436 S.W.3d 445, 450 (Ark. 2014); *Berry v. Regions Fin. Corp.*, 507 F. Supp. 3d 972, 979 (W.D. Tenn. 2020).  Plaintiff alleges that

Carvana breached the RISC by "failing to permanently license and register the vehicles properly in exchange for the fee it charged and collected from the [P]laintiff." Compl. ¶ 44. As explained above, however, Plaintiff fails to identify a single provision in the RISC that required Carvana to permanently and properly license and register the vehicles in exchange for the fees it charged and collected from Plaintiff. *See Ballard*, 436 S.W.3d at 450; *Berry*, 507 F. Supp. 3d at 979-80. Nor could he. The RISC is simply about the *financing* of Plaintiff's motor vehicle purchase; it does not contain any provisions related to the alleged *bargain* of specified or line-item state license, title, and registration fees in exchange for related services. *See* RISC (Ex. C). Plaintiff thus fails to identify any provision of the RISC that Carvana allegedly violated, and his breach of contract claim predicated on that agreement must be dismissed. *Ballard*, 436 S.W.3d at 450 (affirming dismissal of breach of contract claim); *Berry*, 507 F. Supp. 3d at 979-80 (dismissing breach of contract claim).

Plaintiff cannot salvage his breach of contract claim by invoking the implied duty of good faith and fair dealing. *See* Compl. ¶¶ 42, 47; *Mountain Home*, 758 F.3d at 1043. "The Supreme Court of Arkansas has clarified that Arkansas contract law does not recognize a separate contract claim for breach of a duty of good faith and fair dealing." *Mountain Home*, 758 F.3d at 1043 (citing *Arkansas Research Med. Testing, LLC v. Osborne*, 2011 Ark. 158, 2011 WL 1423993, at *6 (April 14, 2011)). Tennessee law is in accord. *See Duke v. Browning-Ferris Indus. of Tenn., Inc.*, 2006 WL 1491547, at *9 (Tenn. Ct. App. May 31, 2006) ("breach of the implied covenant of good faith and fair dealing is not an independent basis for relief"). Arkansas and Tennessee law instead require Plaintiff to allege facts that would establish Carvana violated the duty of good faith and fair dealing by breaching an express term of the contract. *See, e.g.*, *Williams v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 2573196, at *4 (E.D. Ark. June 22, 2010) (dismissing claim where

17

plaintiff did not allege that defendant "violated any specific contractual provision"); *LeBlanc v. Bank of Am., N.A.*, 2013 WL 3146829, at *14 (W.D. Tenn. June 18, 2013) (dismissing claim where plaintiff "failed to sufficiently plead a breach-of-contract claim" and thus could not state a "basis for a breach-of-contract claim based on a breach of the covenant of good faith and fair dealing"). As discussed, Plaintiff cannot and does not allege that Carvana breached an express term of the RISC because the RISC contains no terms related to the registration, licensing, and titling of the vehicles in exchange for specified fees. *See* disc. *supra* 2-3 & n.3.  Plaintiff's claim for breach of contract should thus be dismissed. *See Williams*, 2010 WL 2573196, at *4; *LeBlanc*, 2013 WL 3146829, at *14.

      **B.**     **Plaintiff's DTPA Claim Should Be Dismissed Because Tennessee Law Applies, The DTPA Does Not Allow Class Claims, And Plaintiff Fails To Allege A Misrepresentation On Which He Relied**

Plaintiff's claim under the DTPA also fails. *First*, the Arkansas DTPA claim should be dismissed because, as discussed in detail above, Tennessee—not Arkansas—law governs Plaintiff's claims. *See supra* at 2-3.  That is dispositive of Plaintiff's DTPA claim here.  *See*, *e.g.*, *Brunson*, 2018 WL 6252515, at *3 (dismissing DTPA claim in light of Texas choice-of-law provision); *Cortina v. Wal-Mart, Inc.*, 2014 WL 2860285, at *3, 5 n.4 (S.D. Cal. June 23, 2014) (dismissing DTPA claim where California law applied).

*Second*, even if Arkansas law applied, the DTPA claim still fails.  The Arkansas legislature amended the DTPA in 2017, and since that time, the DTPA does not permit a private plaintiff to bring a class action claim (unless the claim is being asserted for a violation of Arkansas Constitution, Amendment 89).  *See* Ark. Code Ann. § 4-88-113(f)(1)(B) ("A private class action under this subsection is prohibited").  Plaintiff's attempt to assert a class claim under the DTPA

thus fails.[7]  *See, e.g., In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1165 (D. Minn. 2014) ("Rule 23 cannot be applied to otherwise prohibited class actions, because the class-action prohibition defines the scope of the state-created right, namely the right to bring a lawsuit for violations of the state's consumer-protection law."); *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 798 (E.D. Mich. 2019) (finding the "class action prohibitions set forth" in state consumer protection statutes "define the scope of the state-created rights and are therefore substantive and not displaced by Rule 23"); *Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d 1257, 1301 (E.D. Mich. 2021) (The "bar on class actions in state consumer protection statutes like these is best understood as a substantive policy choice: these states do not want consumer protection claims to be maintained as part of class actions.").[8]

Plaintiff also fails to assert an individual claim under the DTPA.  To bring a private individual action under the DTPA, a private plaintiff must allege (1) a deceptive consumer-oriented act or practice which is misleading in a material respect, (2) reasonable reliance on the alleged misleading act or practice, and (3) injury resulting therefrom.  *J&B Tankers, Inc. v. Navistar Int'l Corp.*, 539 F. Supp. 3d 955, 963 & n.16 (E.D. Ark. 2021); *White v. Volkswagen Grp. of Am., Inc.*, 2013 WL 685298, at *6 (W.D. Ark. Feb. 25, 2013).[9]

---

[7] Although Plaintiff labels his DTPA claim an "Individual Claim," he alleges that his claim is brought "on behalf of the Arkansas Title Class members" (Compl. ¶ 48) and that the "Arkansas Title Class members justifiably relied on Carvana's acts and omissions" (*id.* ¶ 55).

[8] While a handful of district courts have considered the bar on class proceedings in the DTPA to be procedural, those decisions are distinguishable, and none is binding on this Court.  *See, e.g.*, *Mounce v. CHSPC, LLC*, 2017 WL 4392048, at *7 (W.D. Ark. Sept. 29, 2017) (evaluating whether the bar applied retroactively); *Murphy v. Gospel for Asia, Inc.*, 327 F.R.D. 227, 243-44 (W.D. Ark. 2018) (same); *Whitley v. Baptist Health*, 2020 WL 4575991, at *1 (E.D. Ark. Aug. 7, 2020)  (case was filed before the 2017 amendments to the DTPA, and court relied on *Mounce* without analysis).

[9] Because a claim under the DTPA sounds in fraud, it is subject to the heightened pleading standard required by Fed. R. Civ. P. 9(b).  *See Jarrett v. Panasonic Corp. of N. Am.*, 8 F. Supp. 3d 1074, 1084-85 (E.D. Ark. 2013) ("The pleading must discuss the time, place, and contents of false

Plaintiff alleges that he paid the fees at issue as part of his purchase of a vehicle from Carvana because Carvana made misrepresentations that "influence[d] plaintiff to purchase the subject vehicle in violation of the DTPA." Compl. ¶ 56; *see also* Compl. ¶¶ 51-55. The only non-conclusory misrepresentation upon which Plaintiff allegedly relied in paying the fees at issue are the alleged line-item entries for the state registration, state title, and license plate fees. *See id.* ¶¶ 6, 14, 19, 51. Plaintiff alleges these fees are set forth in the RISC, *id.*, but the RISC does not discuss or outline any such fees or related services. *See* RISC (Ex. C). Plaintiff thus fails to allege that Carvana made a misleading statement in the RISC upon which he reasonably relied in deciding to pay the fees at issue or that he was damaged as a result, and Plaintiff's statutory claim should be dismissed. *See, e.g.*, *White*, 2013 WL 685298, at 7 (dismissing DTPA claim where plaintiff failed to plead that she "relied on particular false representations in making the decision to purchase her vehicle").

## CONCLUSION

For the reasons set forth above, Carvana respectfully requests that the Court compel arbitration on a non-class basis and dismiss or stay this case. Alternatively, Carvana requests that the Court dismiss the Complaint with prejudice for failure to state a claim on which relief can be granted. Carvana further respectfully requests all such other relief as the Court deems appropriate.

Dated:  February 28, 2022                    Respectfully submitted,

                                             /s/ Robert C. Collins III
                                             Robert C. Collins III, one of the Attorneys
                                             for Carvana, LLC

---

representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.").

Eric Leon (New York Bar No. 2626562) (Admitted *Pro Hac Vice*)
eric.leon@lw.com
Marc S. Werner (New York Bar No. 5301221) (*Pro Hac Vice* application forthcoming)
marc.werner@lw.com
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864

Robert C. Collins III (Illinois Bar No. 6304674) (Admitted *Pro Hac Vice*)
robert.collins@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL  60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767

Grant E. Fortson
gfortson@laxvaughan.com
Ark. Bar No. 92148
LAX, VAUGHAN, FORTSON, ROWE & THREET, P.A.
11300 Cantrell Road, Suite 201
Little Rock, AR 72212
Telephone:  (501) 376-6565

## <u>CERTIFICATE OF SERVICE</u>

I, Robert C. Collins III, hereby certify on February 28, 2022, I caused the foregoing document to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification to all counsel of record.

<u>/s/ Robert C. Collins III</u>
Robert C. Collins III, One of the Attorneys for
Carvana, LLC

Robert C. Collins III
robert.collins@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL  60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767